# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
      **Plaintiff,**

  v.                                                         Case No. 13-CR-042

**DAVID PIEROTTI**
      **Defendant.**

## SENTENCING MEMORANDUM

Defendant David Pierotti attempted to purchase a hunting rifle at a Wal-Mart store in Berlin, Wisconsin. In filling out the ATF form in connection with the purchase, he falsely denied his previous conviction for a misdemeanor crime of domestic violence (which made him a prohibited person under federal law, see 18 U.S.C. § 922(g)(9)). The transaction was denied, but the government indicted defendant for making a false statement in attempting to acquire the firearm. See 18 U.S.C. § 922(a)(6). At trial, defendant claimed that he made a mistake in answering the question incorrectly, but the jury found him guilty of knowingly making a false statement. I ordered a pre-sentence report ("PSR") and set the case for sentencing.

**I.**

In imposing sentence, the district court must first calculate the defendant's imprisonment range under the advisory sentencing guidelines, then hear the arguments of the parties and make an individualized assessment of the appropriate sentence based on all of the factors set forth in 18 U.S.C. § 3553(a). United States v. Boroczk, 705 F.3d 616, 622 (7th Cir. 2013). Section 3553(a) directs the court to consider, in addition to the sentence guidelines and policy statements: the nature and circumstances of the offense, and the history and characteristics

of the defendant; the need for the sentence imposed to provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed correctional treatment in the most effective manner; the kinds of sentences available; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). After considering these factors, the court must impose a sentence that is sufficient, but not greater than necessary, to satisfy the purpose of sentencing. Id.

**II.**

The PSR set a base offense level of 14 based on defendant's status as a prohibited person, U.S.S.G. § 2K2.1(a)(6), and denied a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 because defendant took the case to trial. Coupled with defendant's criminal history category of III, the PSR set an imprisonment range of 21-27 months.

Defendant argued that he should receive a lower offense level under U.S.S.G. § 2K2.1(b)(2), which provides:

> If the defendant, other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6.

The government opposed the reduction, arguing that because defendant never actually "possessed" the gun, the guideline did not apply.

I disagreed with the government. Nothing in the guideline suggests that, as a matter of law, the reduction cannot apply under these circumstances – where the defendant was convicted under the attempt provision of 18 U.S.C. § 922(a)(6). Section 2K2.1 covers a variety

2

of firearm-related offenses, including unlawful possession cases, e.g., 18 U.S.C. § 922(g), and false statement in (attempted) acquisition cases, e.g., 18 U.S.C. § 922(a)(6). It would make little sense – and contravene the guidelines' general rule of punishing attempts less severely, see U.S.S.G. § 2X1.1 – to permit the reduction for actual possessors but deny it for those who merely attempt to acquire a firearm for sporting purposes.

Further, if the Commission intended the sporting purposes reduction to apply only to actual possession cases, it could have said so. Instead, § 2K2.1(b)(2) denies the reduction only if the defendant is subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5),[1] or if he unlawfully discharged or otherwise unlawfully used the firearm. Defendants convicted under 18 U.S.C. § 922(a)(6) are generally subject to U.S.S.G. § 2K2.1(a)(6), as defendant was here (at least preliminarily) based on his status as a prohibited person. Finally, courts have recognized that the reduction may apply in § 922(a)(6) cases and in other situations not directly involving the defendant's personal possession. See, e.g., United States v. Lemieux, 462 F. Supp. 2d 78 (D. Me. 2006) (applying the reduction where the defendant violated 18 U.S.C. § 922(a)(6) by falsely denying his previous conviction for a misdemeanor crime of domestic violence in twice attempting to acquire a firearm); see also United States v. Maas, 444 F. Supp. 2d 952 (E.D. Wis. 2006) (applying the reduction where the defendant transferred a shotgun to another person for hunting purposes).[2]

Concluding that the reduction could apply, I turned to the factual question of whether

---

[1] These sub-sections apply if the defendant has prior convictions for crimes of violence and/or controlled substance offenses, or if he possessed a particularly dangerous weapon.

[2] In the alternative, and as discussed below, I concluded that even if U.S.S.G. § 2K2.1(b)(2) did not technically apply, it was appropriate to consider defendant's lower level of blameworthiness under 18 U.S.C. § 3553(a).

3

defendant attempted to possess this gun solely for lawful sporting purposes or collection. According to application note 6, the court is to examine the surrounding circumstances, including the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (such as prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law. U.S.S.G. § 2K2.1 cmt. n.6. The defendant bears the burden of demonstrating that the reduction applies. United States v. Lewitzke, 176 F.3d 1022, 1028 (7th Cir. 1999).

I found that defendant met his burden here. First, the evidence showed that defendant attempted to purchase a hunting rifle. This case did not involve a handgun or some other type of firearm less suitable to lawful sporting purposes. Second, the evidence showed that defendant had hunted for most his life; aside from 2011, when he was on probation, he generally obtained a deer hunting license each year. Third, the evidence showed that defendant intended to use this gun for that purpose. Around the time of the attempted purchase, he asked his former probation officer and a sheriff's deputy whether he could deer hunt that year since he was no longer on supervision. Also around that time he obtained a deer hunting license for the upcoming season. The evidence showed that he planned to hunt in a new location, so he wanted a different gun, and because he had been working hard and had some extra money he decided to buy this weapon for the upcoming deer hunting season. He told an ATF agent, in an interview shortly after the attempted purchase, that he tried to buy the gun for deer season. Fourth, defendant had no criminal history for offenses involving firearms. Finally, there was no indication that his possession was restricted by local law. See, e.g., United States v. Massey, 462 F.3d 843 (8th Cir. 2006) (affirming application of the

4

guideline under somewhat similar, but less compelling, circumstances). I therefore reduced the offense level to 6.[3]

Defendant also objected to the PSR's denial of a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Application note 2 explains that this adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations, a defendant may clearly demonstrate acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). U.S.S.G. § 3E1.1 cmt. n.2. The defendant bears the burden on this issue as well. United States v. Hendricks, 319 F.3d 993, 1009 (7th Cir. 2003).

Defendant argued that he went to trial to preserve a legal issue – whether the law, as applied to the undisputed facts, required conviction. It was true that at trial defendant admitted the conduct – that he first answered "yes" but then changed the answer to "no" in response to the question about his prior domestic violence conviction. He also conceded that his denial was false because he had such a conviction. However, he denied that he knowingly made a false statement, claiming that he made a mistake. Such a denial was inconsistent with the

---

[3]To the extent that it may be harder to apply the sporting purposes reduction to a § 922(a)(6) offense given the absence of evidence of the defendant's actual use, this case demonstrated that determining a defendant's intent for the gun can be relatively simple.

5

reduction, even if he otherwise admitted the conduct. See, e.g., Hendricks, 319 F.3d at 1009 (upholding the denial of a § 3E1.1 reduction for a defendant who contested the mens rea element at trial); see also United States v. Tom, 494 F.3d 1277, 1281 (10th Cir. 2007) ("[W]e have repeatedly upheld denials of, and reversed awards of, § 3E1.1 reductions where defendants have challenged the factual element of intent."); United States v. Forchette, 220 F. Supp. 2d 914, 920-22 (E.D. Wis. 2002) (collecting cases holding that the reduction is generally unavailable when the defendant challenges intent). Defendant did not otherwise attempt to show how he qualified for the reduction under the factors in application note 1, so I overruled this objection.

### III.

With the U.S.S.G. § 2K2.1(b)(2) reduction, defendant faced a guideline range of 2-8 months. The government argued for a sentence of imprisonment, while defendant requested probation. On consideration of the §3553(a) factors and the arguments of the parties, I found a sentence of probation with a home confinement condition sufficient but not greater than necessary.

### A.

The facts of this case were straightforward. On November 8, 2012, defendant attempted to purchase a rifle at a Wal-Mart location in Berlin, Wisconsin. In filling out the ATF Form 4473 in connection with the purchase, he initially answered "yes" to question 11 i, which asked if he had ever been convicted of a misdemeanor crime of domestic violence. After the computer recommended that he check his answers, he went back and changed his answer to "no." That was false, because defendant had been convicted of such an offense in state court in 2011.

6

The transaction was denied on November 14, 2012, and defendant never received the gun.

In an interview with an ATF agent a month later, defendant admitted that he tried to buy a firearm for deer season from Wal-Mart. He indicated that he initially checked "yes" on this question, but when the computer would not process the application he changed his answer to "no." He also admitted that he had been convicted of a domestic violence offense.

In his statement to the PSR writer, defendant indicated that he thought he was allowed to possess a firearm. He explained that he checked with his former state probation officer, asking if it would be a problem for him to deer hunt, and she said no (which she admitted at the trial). Defendant also reported that he asked a sheriff's deputy if he could go hunting. After receiving this information, he purchased a deer hunting license and then went to purchase a firearm.

**B.**

Defendant was thirty-four years old, with a prior record for a misdemeanor theft in 2005, then a string of domestic violence-related cases in 2011 and 2012, all of which involved the same woman – the mother of his youngest child.

The PSR discussed defendant's upbringing, growing up in extreme poverty. Defendant also reported that his father had a very quick temper, drank too much, and struck defendant regularly as a child. His mother also had mental health issues. Some of this was confirmed by state records.

Defendant appeared to have a good relationship with his parents currently, and defendant's father made an honest statement to the PSR writer about his problems in the past. He stated that he wishes he would have been as good a father as defendant is to his children.

Defendant's father did indicate that defendant has a quick temper and needs some counseling in that area. Defendant's mother also made a positive statement, indicating that defendant has had problems with relationships but works hard, pays child support, and has his children every weekend.

Defendant was married from 2003 to 2006, and the marriage produced two sons, now ages nine and eight. The kids live with defendant's ex-wife during the week and stay with defendant every weekend. The record showed that he paid regular support, deducted from his paycheck, but owed slight arrears of $329.59. The PSR reported another marriage, from 2006 to 2010, which produced no children. Defendant had a third son, age two, with a former girlfriend, the victim in his prior DV cases. Obviously, that relationship was marked by turmoil. According to the child support office, defendant also made regular payments for this child, with $235.69 in arrears.

Defendant's current relationship seemed stable. His girlfriend, a student at Fox Valley Technical College, indicated that she got along well with defendant's children. She also indicated that defendant treated her with a great deal of respect, and she never felt threatened by him.

In considering correctional needs, I concluded that, although defendant did not appear to have any significant mental health issues, anger management counseling would help. Drinking had been a problem in the past, although that appeared to now be in check. Defendant graduated from high school and compiled a solid employment work history, working full time as a mechanic for the past two years. The court received a positive letter from his employer, indicating that defendant was an asset to the company, one of the best technicians they had ever seen.

**C.**

As indicated, the guidelines called for a term of 2-8 months, which is a Zone B range permitting a sentence of probation with community confinement. U.S.S.G. § 5C1.1(c). Under all the circumstances, I found such a sentence sufficient but not greater than necessary to satisfy the purposes of sentencing.

The offense was mitigated by the fact that defendant attempted to acquire the firearm for hunting, not some unlawful purpose. See Lemieux, 462 F. Supp. 2d at 85 (explaining that U.S.S.G. § 2K2.1(b)(2) reduces the recommended sentence by virtue of the lower level of blameworthiness attached to sporting purposes).[4] I also noted that defendant checked with his former probation officer to see if it would be OK for him to hunt before attempting to acquire the gun. While knowledge that he was a prohibited person was not relevant to the charge – the knowledge required there pertained to the DV conviction, which defendant knew he had – it was a relevant consideration in evaluating his culpability for sentencing purposes. Under these circumstances, I found that prison was not needed to provide just punishment; a term of probation with home confinement sufficed to punish defendant for his lie on the form.

I had some concerns about defendant's temper, and particularly the toxic relationship he had with the mother of his youngest child. However, I concluded that prison was not needed to protect the public. Defendant had no history of gun violence or other misuse of a gun, and his other incidents of violent behavior all revolved around this one relationship. He did not appear to be violent in general. He had problems on state probation, leading to

---

[4]Thus, even if U.S.S.G. § 2K2.1(b)(2) did not technically apply, I would have considered this mitigating factor under 18 U.S.C. § 3553(a). It would make no sense to say that a defendant who actually received the gun for hunting purposes should receive a lower sentence than a defendant whose motive was just as clear but whose transaction was denied.

9

revocation, but that again appeared to be related to his inability to get along with this woman. It did not appear that he was otherwise unable to complete probation, and he had done well on federal pre-trial supervision. I found that a term of federal probation with conditions would suffice to deter future violations and to protect the public. It would also allow him to continue working and supporting his children.

**IV.**

I therefore place defendant on probation for 3 years. I found this term sufficient but not greater than necessary to ensure monitoring and treatment. Based on his financial situation, I found that defendant lacked the ability to pay a fine and so waived the fine. Given his work schedule and child care duties, I found that requiring defendant to comply with child support obligations as a condition of probation under 18 U.S.C. § 3563(b)(1) satisfied the requirements of 18 U.S.C. § 3563(a)(2). As conditions of probation, I required defendant to participate in an anger management program and serve 90 days of home confinement.

This sentence was based on 18 U.S.C. § 3553(a) and would have been the same regardless of my findings on the guidelines. Specifically, even if U.S.S.G. § 2K2.1(b)(2) should not technically apply under these circumstances, I found that defendant's hunting motive supported a probationary sentence. I would have also imposed the same sentence even if a reduction for acceptance of responsibility should have been granted; this sentence was consistent with the range such a reduction would have produced.

Dated at Milwaukee, Wisconsin, this 19th day of September, 2013.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

10